Smith *v*, Woodruff.

---

SMITH and MAURY *vs.* WOODRUFF.

Where the defendant has procured a trade mark closely resembling one already in use by the plaintiff, and has attached it to a perfume manufactured by him, adopting the same name and style of packages as the latter, with the intention of counterfeiting the plaintiff's trade mark, as well as imitating the article, and style of packages used by him, and of appropriating, through such counterfeit label, the market obtained for the perfumery of the plaintiff, and in this design he has been to some extent successful, and has thereby injured the plaintiff, it is a proper case for an injunction to restrain the use of the label or trade-mark, notwithstanding the defendant sets up the defense that the plaintiff, in selling his perfume, is attempting to impose upon and defraud the public; if the evidence upon that subject is conflicting.

That defense ought to be suggested by the *court,* whenever the imposition on the part of the plaintiff is flagrant. Thus when a quack compounds noxious and dangerous drugs, hurtful to the human constitution, and advertises them as a safe and sure remedy for disease; or when a charlatan avails himself of the prejudice, superstition or ignorance of some portion of the public to palm off a worthless article, even when not injurious, the case falls beneath the dignity of a court of justice to lend its aid for the redress of such a party, who has been interfered with by the imitations of another quack or charlatan. *Per* LEONARD, P. J.

Smith *v.* Woodruff.

But the suggestion comes with a poor grace from one who has, by the imitation, been guilty of the same fraud or imposition upon the public, if such it happen to be. *Per* LEONARD, P. J.

APPEAL from an order dissolving an injunction restraining the defendant from manufacturing and selling a perfume called " Sweet Opoponax of Mexico ;" from selling any perfumery with that name ; from using the name in connection with any perfumery ; from using the plaintiffs' label, or any imitation or counterfeit thereof ; and from using the label now employed by the defendant, copies of which are set out in the complaint.

*S. C. Conable*, for the appellants.

*W. F. Cogswell*, for the respondent.

*By the Court*, LEONARD, P. J. An examination of the papers, which are rather voluminous, satisfies me that there is no originality with the plaintiffs in the name. The same words and combination had been previously used.

The label and trade mark was designed and procured to be engraved by the plaintiffs in 1865. They used it nearly a year, when the defendant procured one very closely resembling it, and commenced to attach it to a perfume manufactured by him, adopting the same name, and style of packages. There can be no doubt that it was done with the intention of counterfeiting the plaintiffs' label or trade mark, as well as imitating the article and style of packages used. The article had obtained some success in the market, before the defendant commenced his imitation.

A young man, believed to be the son and agent of the defendant, applied to John A. Manget, a lithographer in the employment of Alphonse Brett, the artist who made the plaintiffs' labels, about September, 1866, to procure 1000 sheets of labels similar to the plaintiffs', which Manget declined to make. The firm of Brinkler & Kessler, litho-

graphers, of Philadelphia, about the same time, manufac-tured 1000 sheets of labels in imitation of those used by the plaintiffs, on the employment of the defendant, who furnished a copy of the plaintiffs' label to the lithographer for imitation.

The first of October, 1866, was the time when the defendant commenced the sale of the perfume with the counterfeit labels.

The design of the defendant to appropriate to himself, through the counterfeit label, the market obtained for the perfumery by the plaintiffs, is evident ; and also that he has to some extent been successful, and has thereby injured the plaintiffs. The only plausible defense arises from the allegation of the defendant, that the plaintiffs are as wicked as he is, in that they attempt to impose upon and defraud the public, while he attempts only to defraud the plaintiffs.

The justice and morality of this defense is not very high, in the present instance, but this rule of law or equity has been recognized in several cases, and must be followed if the case is brought within its application. It is a defense that ought to be suggested by the court in some cases, and probably would be in all cases where the imposition is flagrant. For instance, where a quack compounds noxious and dangerous drugs, hurtful to the human constitution, and advertises them as a safe and sure remedy for disease ; or when some charlatan avails himself of the prejudice, superstition, or ignorance of some portion of the public, to palm off a worthless article, even when not injurious, the case falls beneath the dignity of a court of justice to lend its aid for the redress of such a party, who has been interfered with by the imitations of another quack or charlatan. But the suggestion comes with a poor grace from one who has, by the imitation, been guilty of the same fraud or imposition upon the public, if such it happens to be.

The present case does not, in my opinion, upon the present evidence, come within the rule sought to be invoked. It

Smith *v.* Woodruff.

is said that the plaintiffs, in connection with their label, put forth a puff, in which it is stated that " The Opoponax is a native flower from Mexico, of rare and very rich fragrance, *from which this extract is distilled,*" &c. On the part of the defendant, several perfumers make affidavit that they have examined the perfume of the plaintiffs ; that they can tell, approximately, the ingredients from which it is made ; and that it is not distilled from the flower of opoponax, but is a compound of several well known tinctures, or essential oils, combined with pure spirits. Others state that there is a resinous gum in the market, of a disagreeable odor, but no flowers of opoponax.

The plaintiffs, and their chemists, swear that the said opoponax is used in the preparation, distillation and manufacture of the said perfume, and that the perfume is made from it. Several perfumers also make affidavit that it is not possible for any perfumer to tell the ingredients of the plaintiffs' perfume.

Under this contradictory state of the evidence, the principle sought by the counsel for the defendant to be here applied is not available to him.

The order appealed from should be reversed, and the injunction restored, so far as to restrain the use of the label or trade-mark, with $10 costs of the motion, and $10 costs of the appeal, to abide the event.

[NEW YORK GENERAL TERM, April 1, 1867. *Leonard, Sutherland* and *Ingraham,* Justices.]