# Court of General Sessions—County of New York.

## April, 1888.

## PEOPLE v. MOLINS.

### COUNTERFEITING A TRADE-MARK.

The courts of this State have jurisdiction to try a defendant for counterfeiting a foreign trade-mark. The Act of Congress (Act of March 3, 1881, 21 Stat. L. 502), in reference to the counterfeiting of trade-marks refers to trade-marks registered in accordance with the United States statutes.

The reading upon the trial of a deposition taken before the trial of a witness in behalf of the prosecution with the consent of the defendant, is not an infringement of the constitutional privilege of the defendant of meeting his accusers face to face.

A trade-mark which had been transferred or assigned must, to be a valid trade-mark and capable of forgery, have upon it a statement of the fact of the assignment or transfer; but where a portion of the forged trade-mark was original with and invented by the assignee of the remaining portion, the portion original with the assignee is a valid trade-mark which is capable of forgery.

To render the defendant guilty of counterfeiting a trade-mark the jury must be satisfied beyond reasonable doubt that his act was done with intent to defraud, and, to show such intent, that the defendant knew the rights of the party intended to be defrauded.

In such a case the jury, to convict, must be satisfied that the alleged trade-mark was the exclusive property of the owner alleged in the indictment and, even if valid, had not been abandoned by acquiescence in its use by others.

And the jury in such a trial must be satisfied that the alleged trade-mark was capable of appropriation as a trade-mark.

In such a case the jury have, as bearing upon the probable guilt of defendant, the right to consider the fact that in addition to the trade-marks alleged to be forged and found in possession of defendant, he had in his possession a large quantity of other spurious trade-marks.

And also the jury may consider upon such a trial the facts as indicating the criminal intent, that the counterfeit trade-mark printed by or by the procurement of defendant and in his possession falsely represented on its face that it was printed by the printer of the original or genuine trade-mark.

A detective employed by the complainant to obtain evidence upon which to predicate a criminal prosecution, is not an accomplice, and therefore his testimony need not be corroborated.

Trial of defendant Jose S. Molins in the Court of General Sessions of the Peace for the City and County of New York, Hon. FREDERICK SMITH, Recorder, presiding, under an indictment under section 364 of the Penal Code, charging the defendant in various counts with counterfeiting a trade-mark, and having possession of counterfeited labels. The prosecution elected to ask for the conviction of defendant under the fifth and sixth counts of the indictment, for making and counterfeiting a certain trade-mark.

*Assistant District-Attorney Davis*, for the people.

*Benjamin F. Foster*, *William B. Ellison*, *Charles C. Gill*, and *Willard L. McCorkle*, for the defendant.

The trade-mark which was charged to have been forged was the label of Partagas & Co., manufacturers of cigarettes in Cuba, which trade-mark and the right to use the same, were alleged at the time of the trial to be in Juan A. Bances, and Mr. Bances printed the labels on wrappers which he put upon the cigars and cigarettes manufactured by him. Part of the label was original with Bances, and part derived by assignment from Partagas & Co.

The fifth and sixth counts of the indictment, upon which the prosecution elected to go to the jury, were as follows:

In the fifth count defendant was charged that he "unlawfully and knowingly did falsely, make and forge a certain trade-mark, to wit; a certain mark used by Juan A. Bances, to indicate himself as the maker and seller of certain cigarettes, the same being a printed wrapper with the name of him, the said Juan A. Bances, and also certain other letters and words, devices, emblems, figures and other marks printed thereon, which said trade-mark had been theretofore lawfully adopted by the said Juan A. Bances, and was by him then usually affixed to such cigarettes so made and sold by him as aforesaid to denote that the same were so made and sold, against the form of the statute," etc.

By the sixth count of the indictment the defendant was charged with unlawfully and knowingly having in his possession the trade-mark already described.

The portion of the trade-mark which the recorder held to be not capable of forgery, and which he described as "the ellipse," from the ellipse which was made around it, in the indictment, was as follows:

Before the jury was impaneled, defendant's counsel stated to the court, that he wished to make a motion upon the ground that the court was without jurisdiction for the reason that this was a case of foreign trade-mark, saying, "The point I make is that Congress having made the Act of March 3, 1881, in reference to the subject, it is exclusive and supersedes all the State legislation, and I ask your Honor, therefore, to allow the defendant to withdraw his plea of "not guilty," and allow us to make a motion to quash the indictment.

THE COURT.—[Referring to the Act of Congress.]—

That only applies to registered trade-marks, I judge.    It is an Act to authorize registration of trade-marks and goes on to make provision as to how they shall be registered and what are entitled to be registered and certified and so on, and says, ' Any person, who shall reproduce, counterfeit, copy or colorably imitate any trade-mark registered under this Act, and affix the same to merchandise of substantially the same descriptive properties as those described in the registration shall be liable to an action on the case for damages for the wrongful use of said trade-mark at the suit of the owner thereof." This is not a registered trade-mark.

*Mr. Foster.*—No, sir ; but Congress has made the law relate to commerce, and when it does, its authority is paramount and supersedes all State legislation, and whether there can be State legislation in view of that statute I submit to your Honor."

The motion was denied.

The prosecution attempted to produce in evidence certain testimony taken *de bene esse* under stipulation between the people and defendant's attorneys. This stipulation, which was signed by defendant's attorney, recited that the testimony should be read " upon the trial of this action with the same force and effect as if the same had been given in court upon the said trial by the said witness."

*Mr. Foster.*—I object to the reading of the deposition by the prosecution. I believe a man has a constitutional right to meet his accusers face to face, and hold that neither the defendant nor any person for him can waive his constitutional rights; and I cite the leading case in this State (Cancemi *v.* People 18 *N. Y.* 128), where it was stipulated to go on with eleven jurors, but it was held that he was entitled constitutionally to twelve jurors and ought not to have been tried despite the waiver.

THE COURT.—I knew the decision; that is a different matter from stipulating to take testimony. I think I will

overrule that objection and allow the reading of the deposition.

At the close of the evidence the defendant moved the Court to advise the jury to acquit, on these grounds:

First. That the ownership of the alleged trade-mark is not clearly shown to have been in the person named in the indictment as the owner; and,

Second. That as the only claim of ownership made by the claimant in this case is that of transferee or assignee, an acquittal of the defendant should be directed because no notice of the transfer or assignment appears in the trade-mark itself. This is essential. " The assignee or purchaser of a trade-mark from the original proprietor must in the use thereof indicate that he is the assignee or purchaser, or he will not be entitled to protection in the use of the mark so obtained." The label indicates that the cigarettes contained in the package upon which the label is placed are the cigarettes of Partagas & Co., and this is a deception upon the public.

*Mr. Davis.*—The label clearly denotes by the words "Paratagas & Co. de J. A. Bances" that it or a portion of it was got from Partagas & Co., those words meaning " Partagas & Co., of J. A. Bances." But further that a part of the label is original with Bances, the complainant, and never was the property of Partagas & Co. This is a criminal, not a civil action, and the defendant cannot set up fraud in the complainant. Smith *v.* Woodruff, 48 *Barb.* 438.

The Penal Code merely says, " That a trade-mark is a name used to indicate the maker lawfully adopted by him and usually affixed to an article of merchandise to denote that the same is imported or, as, in this case, manufactured and produced by him.

THE COURT denied the motion, saying: " I shall hold that a portion of the label called the ellipse is not matter which is susceptible of forgery, for the reason stated in this case in the 23rd Federal Reporter—that is, that the assign-

ment is not indicated on that portion of the label. But I will hold that the remaining portion, all over and above that ellipse, is a matter susceptible of forgery, capable of being forged."

*Mr. Foster.*—So far as the fifth count is concerned, it seems to set forth the whole label. (Reads) That covers the whole label; I suppose, if it is vicious in one part, it vitiates the whole.

THE COURT.—No, because the proof shows that the whole label is composed of two parts.

*Mr. Foster.*—No distinction is made in this fifth count.

THE COURT.—I know, but we have the proof here. One of the parts was the original label of the Partagas—that portion of the label embraced in what is called the ellipse—and the remaining portion of the label is designed by Bances.

*Mr. Foster.*—But the fifth count says: (Reads) Meaning the whole label.

THE COURT.—I know, but the proof says that the label is composed of two distinct labels or trade-marks.

*Mr. Foster.*—It is not so indicated in the indictment.

THE COURT.—I am talking of the proof now.

*Mr. Foster.*—Now, in the sixth count, in describing the trade-mark that the defendant is charged with infringing, it says: (Reads) That is, the whole label itself—everything that is in it is charged with being the trade-mark of Bances.

THE COURT.—I know that.

*Mr. Foster.*—If it was his trade-mark and it should have been used by describing Bances as the assignee, it comes within the case of the 23rd *Federal Reporter*.

THE COURT.—I ask you whether there is any evidence here whatever introduced on the part of the defendant conflicting with the evidence introduced by the people, showing or claiming to show that all the label with the exception of the ellipse was a label invented and used by Mr. Bances.

*Mr. Foster.*—No, sir, I don't think there is. There are

figures upon the coins or medals upon the labels and also names and dates. We don't claim that the label in its entirety was used by Partagas, but we do claim that the words "Flor de Tabaccos" were used by him for forty years and had been used by Bances without any notice on the label of the transfer, if any transfer occurred. I don't suppose, for instance, that the figures stamped upon the coins upon the label are distinctive parts of the trade-mark.

#### DEFENDANT'S REQUESTS TO CHARGE.

*First Request.*—That the alleged trade-mark appearing by the evidence to be, if any, a foreign trade-mark, and the protection of foreign trade-marks and the punishment of their infringement being within the exclusive powers of the Congress of the United States under section 8, article 1 of the Constitution and having been exercised by Act of Congress of March 3, 1881, the courts of this State have no jurisdiction to proceed for the punishment of infringement of such trade-marks, and section 369 of the Penal Code, under which this indictment is drawn, does not conprehend the case of such trade-marks. United States *v.* Steffens, 100 *U. S.* 82.

Refused.

*Sixth Request.*—That the assignee or purchaser of a trade mark must indicate in his use of it that he is such assignee or purchaser, or he misleads the public. Stachelberg *v.* Ponce, 23 *Fed. Rep.* 430.

Charged.

*Seventh Request.*—That one cannot claim property in a trade-mark transferred to him, either by the original manufacturer or by operation of law, unless the fact of its transfer is stated in connection with its use. Manhattan Medicine Co. *v.* Wood, 108 *U. S.* 218.

THE COURT.—I will charge the seventh request substantially as you have it.

*Eighth Request.*—That the testimony of Johnson, the

person who procured the act charged as criminal to be done, deserves rigid scrutiny, and, unless corroborated, is not entitled to consideration.

THE COURT.—I will refuse to charge this request.

*Ninth Request.*—When a symbol or label, claimed as a trade-mark, is so constructed or worded, as to indicate that the goods are manufactured by a particular person, when, in fact, they are manufactured by another, it is a fraud upon the public, and the person using the label acquires no rights. Manhattan Medicine Co. *v.* Wood, 108 *U. S.* 238; Fetridge *v.* Wells, 13 *How.* 385.

THE COURT.—I will refuse to charge this request except as I will charge.

*Tenth Request.*—That the evidence touching the manufacture of the labels alleged to be counterfeited shows that they were made at the instance of the agent of the alleged owner of the trade-mark; that they were not made by defendant, or by his procurement.

Refused.

*Eleventh Request.*—As the label or wrapper introduced to sustain the allegations of the fifth and sixth counts, contains and embraces a mark adopted by James Partagas, prior to its use by Bances, the alleged proprietor of the label, without indicating its transfer to Bances, the label is invalid as a trade-mark.

Refused.

The Court charged the Jury as follows:

Gentlemen of the Jury:—Under the head of offenses against trade-mark contained in the Penal Code of this State, it is provided that: (Reads section 364 of the Penal Code.)

Now, I understand that this indictment embraces the provisions of this statute to which I have just now called your attention. This statute also defines a trade-mark, and you and I are bound by the statutory definition. It is defined in this manner:

" A ' trade-mark' is a mark used to indicate the maker, owner or seller, of an article of merchandise, and includes, among other things, any name of a person, or corporation, or any letter, word, device, emblem, figure, seal, stamp, diagram, brand, wrapper, ticket, stopper, label, or other mark, lawfully adopted by him, and usually affixed to an article of merchandise, to indicate that the same was imported, manufactured, produced, sold, compounded, bottled, packed, or otherwise prepared by him.

" And also a signature or mark used, or commonly placed by a painter, sculptor, or other artist, upon a painting, drawing, engraving, statue, or other work of art, to indicate that the same was designed or executed by him."

And then there is something referring to works of art.

That is the statutory definition of a trade-mark.

Now, without referring in detail to the testimony of each witness, which you doubtlessly recollect, it will be sufficient for me to call your attention generally to what I understand to be the facts developed in this case. Without, however, intending to influence your judgment on any question of fact, because, if I misstate a fact, or if my statement of the facts as I understand them, does not agree with your recollection and understanding of fact, of course you are not bound by my statement or conclusion. You are the sole judges of all questions of fact, and it is for you to determine those questions, and not for the court. But for the purpose of enabling you to apply the provisions of this statute to which I have just now called your attention, it may be, and will be necessary, for me to state what I understand to be the facts as detailed by the various witnesses which have been introduced in this case, and for that purpose only.

It is claimed that it appears here, that for many years prior to the time mentioned in this indictment, that a person by the name of Partagas, a resident of Havana, was engaged in the manufacturing of tobacco and cigars; that this tobacco had acquired a distinction as a superior article

of that class, and had acquired in that way a value; and that this person was also engaged in the manufacture of cigars from the tobacco grown by him; and that, for the purpose of designating his tobacco, and his manufacture of tobacco into cigars, he adopted and used a label or trade-mark, which had been in use for many years, and up to the time of his decease; that when he died, his business and this property became invested in his son by operation of law, and also in this person J. A. Bances; and that J. A. Bances subsequently acquired whatever interest Partagas' son had in this business and in this property, and he, from that time down to the present time, has been engaged in carrying on and conducting the business that was originally carried on and conducted by Partagas; with this exception, as I understand from the evidence (if I am wrong, of course you will correct me), that Bances commenced to manufacture cigarettes from this Partagas tobacco, so-called, and it is claimed here that by operation of law, Bances became vested with the legal title and the sole and exclusive right to the use of the label or trade-mark which had been adopted and used by Partagas. He (Bances) then, according to the claim made here, on the part of the prosecution, —and I am not aware that there is any conflicting evidence in this case; however, it is for you to say whether there is, gentlemen,—invented a label or trade-mark which has been produced here, and introduced in evidence and proved, if you believe the testimony of the witnesses, for the purpose of covering these cigarettes manufactured by him, and designating them as his manufacture of cigarettes from this Partagas tobacco, and in that label or trade-mark, so-called, he embraced this portion, which is called the ellipse—that round portion which formed the label or trade-mark of Partagas. All this—the remaining portion of this label, with the exception of this ellipse which you have seen here —it is claimed here are the invention of J. A. Bances, and that no other person had any right to use, or any other firm to use that label so invented and appropriated by him.

Now, there does not appear to be any question in this case as to that fact, as I understand the evidence. However, as I said before, that this is a question that you are to determine.

Now, gentlemen, I have held for certain reasons, not necessary for me to explain further than by saying that under a decision which has been referred to by the defendant's counsel—that that portion, the ellipse, or the Partagas label, is not, so far as the evidence in this case shows, the subject of counterfeiting or forgery. But I do hold that the remaining portion of this label, signed by Juan A. Bances is the subject of forgery or counterfeiting; that is, that it is an instrument, the forgery or counterfeiting of which is punishable under the provisions of this statute to which I have already referred.

The fifth count contained in this indictment charges as follows:

(The Court reads the fifth count of the indictment.)

Now, did this defendant forge this trade-mark? There is evidence in this case, which, it is claimed, on the part of the prosecution, established the fact that this defendant was engaged, to a certain extent at least, in carrying on the business of lithographing and printing, with other business; that, on a certain day named, one Johnston applied to him for certain labels, which were to be a counterfeit of the genuine label of J. A. Bances then furnished to him by Johnston, and that this defendant agreed with Johnston in consideration of his receiving from him a specified sum of money mentioned in the bill which has been produced here, that he would furnish to him by a certain time, a certain number of counterfeit labels, counterfeit of the genuine label, which he received for the purpose of counterfeiting; and that, in pursuance of that agreement, he did furnish and subsequently deliver, or cause to be delivered to this man Johnston, a large number, the exact number of which appears on the bill in this case, of counterfeit labels.

Now, the defendant himself substantially admits that he

received this order, that he undertook to furnish the counterfeit label—a counterfeit of the pattern label which was delivered to him for that purpose—and that he had furnished those, and that he had caused them to be delivered to Johnston, and received the compensation agreed upon between him and Johnston for that number of labels.

Now, that is the evidence bearing upon the question of whether he counterfeited that that label.

The first question for you to determine in this case — the evidence is uncontradicted on that point,—is whether that was a genuine label belonging to J. A. Bances, which was handed to him by this man Johnston, and subsequently whether this defendant falsely forged or counterfeited.

If that is so, gentlemen, this defendant would be guilty, under the fifth count of this indictment.

If you come to the conclusion, however, upon the evidence in this case, that that is not so, if you find those facts against the prosecution, then the next question is under the sixth count—whether this man had in his possession knowingly false, forged, and counterfeited labels of this description.

The same evidence to which I have referred as bearing upon the questions involved in the fifth count of the indictment, also bear upon the questions involved in the sixth count.

Now, if this defendant received a genuine label, believing it to be genuine, and if he entered into an agreement either to forge and counterfeit that label, or to cause or procure it to be forged and counterfeited, and to deliver a counterfeit of that label, and had it in his possession, knowing it to be a false, forged, and counterfeited label, here then he comes within the provision of the sixth count of this indictment.

In respect to what are the real facts in this case, there is no doubt that this man, according to his own testimony, was engaged in this business of furnishing a very large amount of spurious labels, and that would have a bearing

upon the question whether he had those spurious labels in his possession knowing that they were spurious, with a fraudulent intent. It is just like the case of a man having a large quantity of counterfeit money in his pocket. If he was found with one counterfeit bill, endeavoring to pass it, that evidence would not be sufficient to warrant a jury in convicting him of knowing that that was a counterfeit bill; but if, when he is informed that it is a counterfeit, he goes into another place of business, and offers to pass the same bill there, and when he is arrested, and in his possession is found a large quantity of the same character; why, the law authorizes the jury to infer and conclude a guilty knowledge on his part; and it is so in this case. If this man was found with one or two labels—a small quantity of these labels—it probably would not be evidence to justify you in coming to the conclusion that he knew that they were false, and forged, and counterfeit labels. But when you take into consideration the fact that there was found in his pos- session a large number of those counterfeit labels, and that he was selling them in the way it is claimed by the prose- cution, secretly, that he received an order to print them, and that he furnished a large quantity in pursuance of that order, why, of course, it must necesssarily have a very great bearing on the question of his guilty knowledge.

Now, there is something which is claimed on the part of the prosecution, to be very peculiar to this case. The defendant, it seems, for several years has been engaged in furnishing to various parties, labels to be used for the pur- pose of representing a certain brand of cigars or cigarettes; that he has taken large orders and furnished large quantities of such labels, and yet, with one or two exceptions, he can- not tell you the names of any lithographers or other persons, who were engaged under his orders, in the manufacture of those labels. He seems to forget all, or nearly all, of those names. That may be, or may not be, a circumstance bear- ing upon the guilt of the defendant, under the two counts of the indictment I have referred to.

Now, on the question of the forgery of the label, you have got the testimony of the expert, the witness who produced those photographs, and he has pointed out to you the difference between the genuine or the alleged genuine, label, and alleged forged label. You recollect his testimony; he tells you, based upon his knowledge and skill, as an expert in matters which he has testified to, that one is a counterfeit of the other, and that evidence is entirely uncontradicted. Now, in addition to that testimony, you have the other fact also,—which does not appear to be disputed, if I recollect the evidence aright,—that this genuine label was printed at or near the works or manufactory of J. A. Bances in Havana, and of course, any label that was printed here, except by his expressed authority, would be a counterfeit of that genuine label, which was printed in Havana. Again, gentleman, another little item of evidence was referred to yesterday, that may, or may not, have a bearing upon the question of guilty knowledge; that is, that the name of the original lithographer or printer in Havana, also appears upon this alleged forged or counterfeit label, and the undisputed fact is, that this alleged forged and counterfeit label was not printed, or was not issued by the lithographer who printed and issued the original, and what is claimed to be the gennine label here. This is a species of fraud, because it is a misrepresentation; it represents on the face of it that it was printed by a person in Havana, the same person who appears to have printed the original or supposed, or alleged, genuine label—that is a badge of fraud, if you find it to exist in this case.

I have been asked to charge you, gentlemen, and charge you that:

" To render the defendant guilty of the misdemeanor charged, the jury must be satisfied beyond reasonable doubt, that his act was done with intent to defraud, and, to show such intent, that the defendant knew the facts constituted the right of the party to be intended to be defrauded."

Well, gentlemen, if a person knowingly issues a paper

which he knows not to be a genuine label, upon the face of which certain representations are made, a jury have the right to infer from that a fraudulent intent—that taken in connection with other facts.

I have been also asked to charge you, and do charge you, that:

"The jnry, in order to convict, must be satisfied that the label set forth in that indictment, was clearly and exclusively the property of Juan A. Bances."

I do so charge. You must be satisfied from the evidence in this case, that the label, or that portion of the label, which I called your attention to, was the exclusive property of Juan A. Bances.

I have also been asked to charge you: ·

"That the jury must be satisfied that the alleged trademark was capable of appropriation as a trade-mark, and that the use therein of the words descriptive of the articles upon which it was used, is not sufficient."

I do charge that, gentlemen, as requested.

I have also been requested to, charge you, and do charge you:

"That the jury must be satisfied that the alleged trademark, if ever valid, has not been abandoned by acquiescence in its use by others, for a long period"—and I do charge you that.

A man may adopt the trade-mark and it may be a genuine trade-mark, and he may abandon his right to the use of that trade-mark, provided you are satisfied he did actually abandon it, and that adandonment may be no doubt done by his acquiescing in the use of his trade-mark by other persons. Now, is there any evidence in this case whatever which satisfies you that Mr. Bances abandoned his right to the use of this trade-mark, or that he acquiesced in the fraudulent use of his trade-mark by other persons. That is a question for you to determine.

I am also asked to charge you, and do charge you:

"That the assignee or purchaser of a trade-mark must

indicate in his use of it that he is such assignee or purchaser, or he misleads the public."

Well, in ruling as I have, gentlemen, in reference to the ellipse, I have covered, as I understand it, this request to charge. It is not claimed here—nor is there any proof in this case—that that portion of the trade-mark or label which I have submitted to you, as being embraced in this indictment was the subject of assignment by any person to Bances, or by Bances to any other person. I have already stated, as I understand the testimony, that that portion of the trade-mark or label, is the invention and exclusive property, as it is claimed in evidence, of Mr. Bances himself.

The seventh request to charge, I refuse, because I covered it in my charge under the sixth clause.

The ninth and tenth requests I have already refused to charge, except as I have already charged upon the subject matter of these requests.

Now, gentlemen, I have stated all that I think it is necessary for me to say to enable you to come to a proper conclusion as to the guilt or innocence of this party. He introduces some evidence tending to show that he has so far borne a good character. Well, you are to give that evidence just such weight as you think it justly and properly entitled to, and no more. This being a criminal proceeding, the law requires you to take that evidence into consideration, with all the other evidence in the case.

(After charging as to reasonable doubt.)

As to the testimony of Johnston—there was a request to charge, which I declined. Johnston is not an accomplice, within the meaning of that term. Johnston has testified that he was a detective, employed by the complainant Bances, and that what he did in this case was done for the purpose of obtaining evidence on which to predicate this prosecution; and under a very recent decision of the Supreme Court (and I think the Court of Appeals afterwards confirmed it) in a lottery case, People *v.* Noelke, 1 *N. Y. Crim. Rep.* 495, the rule was laid down, that where a per-

son or an officer, for the purpose of obtaining information
on which to predicate a criminal prosecution, makes such a
bargain and arrangement as Johnston undoubtedly did in
this case, that he is not an accomplice within the legal
meaning of that term; and therefore his testimony for the
purpose of being relied upon by the jury need not be cor-
roberated; that is, if a person is an accomplice—one en-
gaged in perpetrating the crime charged, or aiding or assist-
ing in its perpetration, a jury would have no right' to
convict upon his uncorroborated testimony; but in this
case, I charge you that Johnston does not occupy the posi-
tion of an accomplice, under this recent decision of the
Court of Appeals. I do not wish you to understand from
what I have said, that you are not the sole judges of the
credibility of the testimony of Johnston. You have the
right to determine the question of whether his testimony is
entitled to credence or not.

Now, upon that question, is there anything in Johnston's
manner, or what Johnston has said, or in any transaction
with this defendant, that would lead you to believe that he
has willfully and corruptly testified to to what is false. In
many respects he is corroborated by the defendant himself.
In some respects he is contradicted by the defendant. It is
claimed here, that in some respects, that where there is a
contradiction, it is not on any material matter. But he
is corroborated by the defendant so far as the execution of
the order for the goods or labels and the payment of the
money is concerned. The defendant corroborates John-
ston's testimony, and there is no serious conflict between
his testimony and that of Johnston in that respect. The
defendant's testimony is contradicted in some respects, and
it is a matter for you to determine whether it is on any
material matters; and if it becomes a question for you to
determine his credibility, in addition to his manner, and
the nature of his evidence, you have the right, and it is
your duty to take into consideration that he is here charged
with the commission of a criminal offense, it is for you to

say whether that would furnish a sufficient motive or inducement for him to come here on the witness stand, and testify untruly in respect to any material fact that he has testified to, for the purpose of relieving himself from the position in which he is placed.

Now, gentlemen, I repeat again that this is an important case, although it is the lowest grade of crime. If this man is guilty of this offense, he is guilty of an offense which is a very serious one in every large mercantile community, and it is one for which, if he is guilty of it, he ought to be punished, not only for the purpose of preventing him from a continuous violation of the law, but also for the means of preventing other parties from indulging in like criminal acts. That is the object of the criminal law, and the object of punishment for criminal offenses. Your verdict in this case, therefore, will be "Guilty" or "Not Guilty," under the fifth and sixth counts of the indictment, or under either count. If you find him guilty under the fifth count, you will say so. If you find him guilty under the sixth count, you will say that you find him guilty under the sixth count. If you find that he not only forged and counterfeited the labels, but also had them in his possession, knowing them to be forged and counterfeited, you will find him guilty under both counts.

The jury found a verdict under the sixth count of the indictment, and the defendant was sentenced to pay a fine of three hundred and fifty dollars, to be committed till that fine is paid, a day for each dollar.

(There was no appeal.)